UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

Florence and Optatus Chailla,

    Plaintiffs,

v.

Nancy A. Berryhill, Acting
Commissioner of Social Security,
et al.,

    Defendants.

No. 3:18-CV-01129

(Judge Richard P. Conaboy)

FILED
SCRANTON

OCT 2 3 2018


DEPUTY CLERK

**MEMORANDUM**

**I. Background:**

This case arises from an application for spousal Social Security Benefits filed by Plaintiff Optatus Chailla on June 6, 2016. On June 11, 2016, the Defendant Social Security Administration generated a letter to Plainitff Optatus Chailla that simultaneously informed him that his application was approved effective April of 2016, but also informed him that he was not entitled to benefits because he "did not meet the requirements for lawful presence in the United States." (Doc. 12-1, Exhibit 2). The SSA's letter of June 11, 2016 also advised Plaintiff Optatus Chailla that he had a right to appeal the SSA decision, that he could do so within sixty days, and that he could do so with any Social Security Office. *(Id)*. No evidence that Plaintiff availed himself of his right to appeal within the

framework of the Social Security Administration's system exists in the record.

On November 6, 2017, the SSA wrote to Plaintiff Optatus Chailla to request proof of his lawful admittance for permanent residence. (Doc. 12-1, Exhibit 3). That letter also informed Plaintiff Optatus Chailla that proof of permanent residence must be in the form of original records or a copy certified by the custodian of the original record. On May 25, 2018, Plaintiffs filed a "Claim For Damage, Injury, Or Debt" with the SSA in which they alleged that the SSA deprived them of civil rights pursuant to 42 U.S.C. § 1983 and negligently harmed them pursuant to the Federal Tort Claims Act. Plaintiffs alleged specifically that Optatus Chailla had proven that he was lawfully present in the United States pursuant to United States Customs and Immigration Service Form I-797 but that the SSA had unreasonably insisted upon proof via Form I-551, a form that did not pertain to Optatus Chailla's situation. (Doc. 1 at 91).

On June 4, 2018, Plaintiffs filed the instant complaint seeking, inter alia, $7,417,598.00 in damages for the value of unpaid benefits, emotional distress, pain and suffering, loss of consortium, and willful public oppression. (Doc. 1 at 80). The Complaint also seeks the demotion or termination of Defendant Berryhill and various subordinates in the East Stroudsburg, Pennsylvania Office of the SSA. (Doc. 1 at 81).

On August 17, 2018, the SSA notified Plaintiff Optatus Chailla, that he would receive $19,653.40 representing the value of his spousal benefits from April of 2016 through July of 2018. (Doc. 12-1, Exhibit 4). This letter also advised that Plaintiff Optatus Chailla would continue to receive benefits prospectively at $580.00 per month.

We consider here two motions filed in this case. One of the motions is Plaintiffs' Motion for Default Judgment (Doc. 17). The second motion is Defendant's Motion to Dismiss (Doc. 11). We shall consider these motions in the order stated.

**II. Plaintiffs' Motion for Default Judgment.**

Plaintiffs have moved[1] for default judgment pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. Rule 55(a) provides:

> When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise the <u>clerk</u> must enter the party's default. (Emphasis supplied).

Here, Plaintiffs have not applied to the Clerk of Court for entrance of default under Rule 55(a) and that step is a necessary

---

[1] Plaintiffs actually filed three separate, essentially identical, motions against Defendant Berryhill. (Docs. 13, 16, and 17).

precursor for the Court to consider its Motion for Default Judgment. Beyond this technical error, there are more serious infirmities in Plaintiffs' request.

Plaintiffs allege that Defendant Berryhill did not plead or otherwise respond to their complaint within the time prescribed by the Federal Rules. Yet, the docket discloses and they themselves acknowledged that Defendant's responsive pleading, a Motion to Dismiss pursuant to Rule 12(b)(1), was filed on August 20, 2018 within the time permitted by Federal Rules. (See Doc. 16 at 2). Plaintiffs attempt to make much of the fact that Defendant Berryhill's response was not postmarked until the next day, August 21, 2018. Service by mail is "complete upon mailing" under the explicit language of Rule 5(b) of the Federal Rules Civil Procedure. Defendant's Certificate of Service regarding its Motion to Dismiss (Doc. 11 at 4) certifies that the Motion to Dismiss was placed in the U.S. Mail on August 20' 2018. The Court is inclined to accept the veracity of this statement and notes that service by mail is complete "at the instant the documents are placed into the hands of the United States Post Office or a Post Office Box." *United States v. Kennedy*, 133 F.3d 53, 59 (D.C. Cir. 1998); cited with approval in *Greene v. WCI Holdings Corporation*, 136 F.3d 313, 315 (2d Cir. 1998). The Court also observes that a district court has broad discretion to decide whether a party is in default. *D'Onofrio v. Il Mattino*, 430 F. Supp. 2d 431,437

(2006). Among the factors a court may consider in deciding whether to enter a default judgment are: (1) whether the amount of money potentially involved is substantial; (2) whether the default is largely technical; and (3) whether the Plaintiff has been substantially prejudiced by the delay involved. *See Wright, Miller, and Kane*, Federal Practice and Procedure, Vol. 10 A § 2685, at 32-35 (1998)(citations omitted). Having thoroughly examined the parties' filings, the Court finds that all three of these factors militate against entry of default judgment in this case. Thus, the Court concludes that, even if it found Defendant Berryhill to be in default (which it does not), the previously referenced factors would require that the Court deny Plaintiffs' motion. Thus, for the various reasons mentioned above, Plaintiffs' Motion for Default Judgment will be denied.

### III. Defendant Berryhill's Motion to Dismiss.

Plaintiffs have filed a rambling complaint of some ninety-five pages that sets forth claims under 42 U.S.C. § 1983, Federal Tort Claims Act, and various Pennsylvania statutes and common law forms of action. As in any case, this Court must confront the question whether it may appropriately exercise jurisdiction. Having reviewed the parties' filing, we conclude that the Court lacks jurisdiction over this dispute.

As Defendant Berryhill asserts in her brief (Doc. 12 at 2), a district court may not consider the merits of an action until it

is satisfied that the dispute falls within the class of cases or controversies to which Article III, § 2 of the Constitution extends the judicial power of the United States. *Steel City v. Citizens for Better Environment,* 523 U.S. 83, 102 (1998). Judicial review of cases that arise under the Social Security Act is authorized under 42 U.S.C. §§ (g)and(h).[2] 42 U.S.C. § 405(g)states in pertinent part:

> Any individual, after any <u>final decision</u> of the Commissioner of Social Security made <u>after a hearing</u> to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the Plaintiff resides… . (emphasis supplied).

Supreme Court precedent holds that Section 405(g) of the Social Security Act limits judicial review to a particular type of

---

[2] Despite the multiplicity of Plaintiffs' claims, it is clear that this entire case stems from the denial of their application for spousal retirement benefits under the Social Security Act.

agency action, a "final decision of the Secretary made after a hearing." *Califano v. Sanders*, 430 U.S. 99, 108 (1977).

In the instant case Plaintiffs have made no attempt to utilize the procedures set forth by the Social Security Act -- a hearing before an administrative law judge and a request for review to the Appeals Council -- to provide relief to a claimant denied, like Plaintiff Optatus Chailla, at the administrative level. This is so despite the fact that Plaintiffs were explicitly notified of their right to appeal and of the Social Security Administration's willingness to help them process the appeal. (See Doc. 12, Exhibit 2 at 3). Because, as § 405 (g) specifies, a claimant may file a civil action in a United States District Court only after "final decision … made after a hearing" and because it is apparent from the filings that Plaintiffs never even requested a hearing, there is no final decision of the Social Security Administration for this Court to review. This, in turn, deprives the Court of jurisdiction over this matter.

With respect to Plaintiffs' claims against the various individual Defendants, all of whom are employees of the Social Security Administration and contacted Plaintiffs only in their capacity as federal employees, money damages against such Defendants are simply not available. Where a complex statutory mechanism such as the Social Security Act provides what Congress deems to be meaningful relief to claimants and does not include a

-7-

cause of action for money damages against employees of the agency charged with administering the statute, even the improper denial of benefits by such employees cannot give rise to a cause of action for money damages. *Schweiker v. Chilicky*, 487 U.S. 412 (1988). Schweiker v. Chilicky was factually similar to this case in that it involved a claim for money damages based upon malfeasance by both Social Security Administration employees and employees of an Arizona state agency that had contracted with the SSA to screen claims. These Defendants had made erroneous decisions that resulted in an improper denial of benefits. Justice O'Connor, writing for the majority, noted:

> We agree that suffering months of delay in receiving the income on which one has depended for the very necessities of life cannot be fully remedied by the "belated restoration of back benefits." The trauma to respondents, and thousands of others like them, must surely have gone beyond what anyone of normal sensibilities would wish to see imposed on innocent disabled citizens. Nor would we care to "trivialize" the nature of the wrongs alleged in this case. Congress, however, has addressed the problems created by state agencies' wrongful termination of disability benefits. Whether or not we believe that its response was the

best response, Congress is the body charged with
making the inevitable compromises required in the
design of a massive and complex welfare benefits
program. Cf. *Dandridge v. Williams*, 397 U.S. 471,
487, 90 S.Ct. 1153, 1162, 25 L.Ed. 2d 491 (1970).
Congress has discharged that responsibility to the
extent that it affects the case before us, and we
see no legal basis that would allow us to revise
its decision.

Based on this rationale, the Supreme Court reversed a decision by the Ninth Circuit Court of Appeals that had recognized the validity of the claims for money damages. Unhappily for the Plaintiffs in this case, their situation is indistinguishable from that of the Plaintiffs in *Schweiker v. Chilicky*, supra.

### IV. Conclusion.

While this Court is not unsympathetic to the hardships Plaintiffs have suffered, the existing statutory and decisional law can only result in an extinguishment of their claims. Due to the Plaintiffs' failure to exhaust administrative remedies and due to the unavailability of money damages against employees of the Social Security Administration in connection with their administration of a Social Security claim, Defendant Berryhill's Motion to Dismiss will be granted and will extend to the benefit

of the individual Defendants as well. An Order consistent with this determination will be filed contemporaneously.

BY THE COURT,

*(signature)*
RICHARD P. CONABOY
UNITED STATES DISTRICT JUDGE

Dated: October _____ 2018